## Commonwealth v. Ruckle et al.

*Howard R. Berninger*, district attorney, for Commonwealth.

KREISHER, P. J., July 19, 1954.—Ola and Edna Larish, age 73 and 72 years, respectively, are husband and wife, residents of the Town of Bloomsburg, unemployed, with no means of support. They are the parents of three adult sons and six daughters.

At the insistence of the Department of Public Assistance they filed a petition for support against all

of their children under the Act of May 23, 1945, P. L. 864 and 865, 62 PS §1973, which provides under subsection (*a*) that:

"The husband, wife, child, father and mother of every indigent person, whether a public charge or not, shall, if of sufficient financial ability, care for and maintain, or financially assist, such indigent person at such rate as the court of the county, where such indigent person resides shall order or direct."

On the return day of the rule granted upon the presentation of the petition, a hearing was held and one of the petitioners, Edna Larish, the mother, testified that she and her husband were receiving assistance from the Department of Public Assistance in the total amount of $67.60 per month. That in addition thereto the one daughter, Mrs. Ethel Spaid, was contributing $10 per month, and another daughter, Mrs. Catherine Savage, was contributing $7 per month, and that contributions received from the other children were very small, infrequent and, in fact, nothing at all from some of them.

The executive director of the Columbia County Board of Assistance also testified that petitioners have been on the rolls of the Department of Public Assistance for the past six or seven years; that the two above-mentioned daughters have over a period of years made the above-mentioned contributions; that the department did not from their investigation believe that the sons and the four married daughters who were not contributing were of sufficient financial ability to contribute to the support of their parents and, therefore, agreed that this proceeding against them could be dismissed. Therefore, we do not deem it necessary to discuss the liability of the seven children which the department agrees are of insufficient financial ability to contribute.

The only remaining question is the amount which

the two daughters are and have been contributing, it being the contention of the department that their voluntary payments of $7 and $10 per month, under the circumstances, are grossly insufficient, and that they should contribute a much larger amount.

Mrs. Catherine Savage testified in her own behalf, and she explained that she is a widow and the mother of one son who is married and self-supporting. She gives her age as 51, and testified that she is in a poor state of health at the present time, but continues her employment at the Magee Carpet Company where she has been employed for the past 15 years because she has no other means of support. It appears that when she works full time she averages 37½ hours a week, with a take-home pay of approximately $39. There are some weeks, however, that her pay is as low as $31 or $32. She lives in a rented apartment with the usual expenses for food, rent, clothing, telephone, insurance, electric and transportation to and from work. She testified that in addition to those expenses she has an average monthly doctor bill of $8. She states that for a number of years she has been giving her parents $7 per month, and that she is really unable to contribute this much when her work is slack and she does not work full time.

According to the scale set up by the Department of Public Assistance, it is the director's testimony that they believe Mrs. Savage could contribute at least $15 per month. The director explained that the budget set up for the indigent parents would remain the same, and any additional contribution by either of these daughters would be deducted from the amount paid by the Department of Public Assistance and thereby save the State that amount, and the additional amount would not increase the amount being received by the indigent parents. Mrs. Savage further testified that she pays $45 per month rent for her heated apartment,

which is an item in and of itself that takes more than one week of her earnings.

In the case of Mrs. Spaid it appears that she is likewise employed in the Magee Carpet Company with an average take-home pay for full time employment of approximately $41 per week; that she is married and her husband is also employed and they have one son who has just returned from the armed forces and is now endeavoring to secure a college education by taking advantage of the GI Bill of Rights, with additional assistance from his parents. He lives at home with his parents and attends the Bloomsburg State Teachers' College, so that the item of food for the son is provided by his parents. It further appears that Mr. and Mrs. Spaid entered into an agreement to buy their home some years ago, and they have a weekly payment on account of the interest, principal, taxes and insurance of $20 per week on the home which is valued between $3,000 and $4,000. Mr. Spaid is employed at the Magee Carpet Company, and his average take-home pay was not testified to, but we can assume, even though he is not legally responsible for the support of these indigent persons, that it is not a great deal in excess of Mrs. Spaid's. Mrs. Spaid testified that she is in ill health, but the doctor has advised her to continue her employment because of her nervousness, and her doctor bill averages as much as $9 a week, as she visits the doctor two and three times a week and pays $3 each visit. She testified further that $5 was deducted from her wages and sent to the bank on account of repairs to the home which they are endeavoring to purchase. It is interesting to note that even though both of these people are working, they drive a 1947 Dodge that still is not paid for, and they are unable to purchase a better car.

Mrs. Spaid further testified that her parents put her out of the home when she was 14 years of age, at

which time she was forced to go to work, and further, that the contribution of $10 which she has been making she has been giving to the corner grocery man because she did not wish to put any cash in the hands of her father who, she feared, would use the money improperly by reason of his intemperate habits. It has been decided that even though a parent deserts a child and is completely unworthy of his aid when he becomes indigent, the child being of sufficient financial ability, is still liable for the support of the indigent parent. See Commonwealth v. Auman, 39 D. & C. 448.

The Department of Public Assistance contends that under the above enumerated facts, and in accordance with the scale of contribution which they have devised, that Mrs. Spaid should contribute to the support of her parents the sum of $57 per month, and that this amount added to the $15, which they contend Mrs. Savage should contribute, would make a total of $72, and then the department would only have to pay the parents $12.60 to make up the total present budget of $84.60, instead of their support payment of $67.60 to make up the total of said budget, since these two daughters are contributing but $17.

The above-quoted act of assembly, which is called the Support Law, is a statute in derogation of the common law, as there was no legal liability of a child to support a parent at common law and, therefore, the statute must be strictly construed. See Commonwealth v. Morrisey, 150 Pa. Superior Ct. 202.

The history of the early statutes requiring a child to support an indigent parent is thoroughly set forth and reviewed in the case of Commonwealth v. Chiara, 60 D. & C., 547, as well as in the very able opinion by Winnet, J., in the case of Commonwealth v. Auman, above cited, and, therefore, we feel constrained to review the history of these statutes. An examination of the statute as finally amended in 1945 indicates that

grandparent and grandchild has been deleted, but it continues to contain the statement "of sufficient financial ability", which is the crux of the case, and it leaves the rate of contribution to the sound discretion of the court of the county where the indigent person resides, and it does not indicate that the court shall be bound by any table or scale suggested or devised by the Department of Public Assistance.

An examination of the Public Assistance Law as amended by the Act of May 21, 1943, P. L. 434, 62 PS §2501, indicates that the court should be reluctant to make two paupers in order to support one. The very first section of the act declares it "to be the legislative intent that the purpose of this act is to promote the welfare and happiness of all the people of the Commonwealth, by providing public assistance to all of its needy and distressed; that assistance shall be administered promptly and humanely with due regard for the preservation of family life, and without discrimination on account of race, religion or political affiliation; and that assistance shall be administered in such a way and manner as to encourage self-respect, self-dependency and the desire to be a good citizen and useful to society".

It has been held that under the Support Law, above quoted, that the child of an indigent person is under a legal obligation to assist in the support of a parent, if that child is of sufficient financial ability, and that the legal duty of the child to support an indigent parent does not depend solely upon whether or not the child possesses property but whether such child is of sufficient financial ability to give financial assistance to the indigent parent, considering all of the attendant circumstances. See Commonwealth v. Moyer et al., 58 Montg. 155, where it is stated:

"In determining the 'ability' to pay under this act, as well as under kindred support acts, not only the

actual amount earned should be counted, but all the attendant circumstances must be considered: See *Commonwealth v. Henderson*, 143 Pa. Super. 347."

It is the contention of the Department of Public Assistance that since Mrs. Spaid is a married woman it is the duty of her husband to support her, and since she is gainfully employed she may then be considered as having no expenses from her earnings, and that a goodly portion of her earnings should be contributed to the support of her parents. To so hold in our opinion would not be just, nor would it be considering all of the attending circumstances. It seems to us that we should keep in mind the legislative intent of the Public Assistance Law and encourage self-respect, self-dependency and the desire to be a good citizen and useful to society. It is our opinion if we should require Mrs. Spaid to pay the amount here suggested by the department that she would not only become an embittered citizen, but that it would be in direct violation of the Public Assistance Law, because it most certainly would not promote the welfare and the happiness of all the people of this Commonwealth. We, therefore, cannot agree with the reasoning of the Department of Public Assistance in the amount here suggested.

These two ladies are industrious, hard working, saving people, with no extravagant habits whatsoever, endeavoring merely to live a decent, respectable life to secure a small estate for their own well-being and their children, and we do not believe that they should be burdened under their particular circumstances with the payment of an amount here suggested.

Without further comment which we could continue at great lengths in the exercise of the discretion given to the court by the acts of assembly, we feel that the voluntary contributions made by these respective daughters were as much as they could possibly spare

out of their own earnings, and we decline to increase that amount, and to this end we make the following

*Order*

And now, to wit, July 19, 1954, for the foregoing reasons, the rule to show cause why Mrs. Roy Ruckle, Harry Larish, Mrs. William McGaw, Mrs. Albert Schaffner, Ray Larish, Harold Larish and Mrs. Donald Hopper should not contribute toward the support of their indigent parents is hereby dismissed, and the rule to show cause why Mrs. Catherine Savage and Mrs. Ethel Spaid should not contribute to the support of their indigent parents is hereby made absolute, and it is ordered, adjudged and decreed that Mrs. Catherine Savage shall contribute to the support of her indigent parents the sum of $7 per month, and that Mrs. Ethel Spaid shall contribute to the support of her indigent parents the sum of $10 per month.

The costs of these proceedings are to be paid by the County of Columbia.